FILED
 2014 Mar-10 PM 02:42
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KENYUANA MICHELLE EDWARDS,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **vs.** ) <br> ) <br> **CAROLYN W. COLVIN,** Acting ) <br> **Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) | **CASE NO. 2:12-CV-2731-SLB** |

## MEMORANDUM OPINION

Plaintiff Kenyuana Michelle Edwards brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ["DIB"]. (Doc. 6.)[1] Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Ms. Edwards initially filed an application for DIB on June 20, 2007, (doc. 5-4 at 2; r. 86), alleging a disability onset date of May 25, 2006 due to Pericardial Effusion and Major Depression, (doc. 5-6 at 17; r. 165). After the Social Security Administration ["SSA"] denied her application, she requested a hearing before an Administrative Law Judge ["ALJ"], which

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. When the document cited is duplicated in the bound physical copy of the transcript of the entire record of the proceedings, the page number of that transcript is also included, ["Doc. ___; r ___."].

was held on May 24, 2010. (Doc. 5-3 at 23; r. 22.) After the hearing, the ALJ found that plaintiff did not have an impairment or a combination or impairments listed in, or medically equivalent to one listed in, the Listings of Impairments. (Doc. 5-3 at 36; r. 35); *see* 20 C.F.R. § 404.1520(d). The ALJ also found that plaintiff retained the residual functional capacity to perform work-related activities at the sedentary level of physical exertion, (doc. 5-3 at 38; r. 37), and that there are jobs in the national economy that would accommodate plaintiff's limitations, (doc. 5-3 at 40; r. 39). In light of these findings, the ALJ denied Ms. Edwards's request for a period of disability and DIB on July 12, 2010. (Doc. 5-3 at 41-42; r. 40-41.)

Plaintiff then requested the Appeals Council to review the ALJ's decision. (Doc. 5-3 at 2; r. 1.) The Appeals Council found no reason under its rules to review the ALJ's decision, and it denied her request for review. (*Id*.) Therefore, the ALJ's decision is the final decision of the Commissioner. (*Id*.)

Following denial of review by the Appeals Council, Ms. Edwards filed an appeal in this court. (Doc. 1.) She requests that this court reverse the Commissioner's decision or, in the alternative, remand the case for further consideration. (Doc. 6 at 14-15.)

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.

1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

The court reviews the Commissioner's conclusions of law de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. **DISCUSSION**

#### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and/or DIB. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476

U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for DIB] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* § 416(i)(1); § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[2] If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful

---

[2] 20 C.F.R. § 404.1572 and § 416.972 define "substantial gainful activity":
(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[3]

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Doc. 5-3 at 40; r. 39.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a); § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had the following severe impairments: "status post injuries from a motorcycle accident in 2006, headaches, depression, low back pain with radiculopathy, and status post surgical treatment of the left knee." (Doc. 5-3 at 40; r. 39.) The ALJ also found that her alleged impairments of pericardial effusion and obesity were not severe. (Doc. 5-3 at 36; r. 35.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or

equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that Ms. Edwards did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 5-3 at 40; r. 39.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commission's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff could not perform any of her past relevant work. (Doc. 5-3 at 41 ¶ 7; r. 40.)

**5.  Other Work in the National Economy**

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . .  Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ found that plaintiff is a younger individual (32 years old) with high school and two years of college education and transferrable skills from her past relevant work. (Doc. 5-3 at 41; r. 40.) The ALJ found that plaintiff could "perform sedentary work which allows for a sit/stand option and use of a cane for balance," although "[s]he would be restricted to performing simple, repetitive, noncomplex work tasks" and "occasional bending and

8

stooping." She could not reach "unrestricted heights" or perform "push/pull movements with [her] lower extremities" or operate hazardous machinery. Lastly: "no driving." (*Id.*)

The ALJ consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that plaintiff, considering her RFC and her vocational factors, could perform. The VE testified that an individual with Ms. Edwards's limitations and vocational factors could perform the jobs of dowel inspector, cuff folder, and nut sorter type jobs. (Doc. 5-3 at 40; r. 39.) These jobs exist in significant numbers in Alabama and in the national economy. (*Id.*) The ALJ found that if she complied with her RFC, "her pain and depression are expected to reasonably impose no greater than mild to moderate functional limitations upon her ability to perform basic work activities." (Doc. 5-3 at 39; r. 38.) Therefore, the ALJ found that plaintiff was not disabled.

## B. MS. EDWARDS'S CLAIM

Plaintiff alleges that she suffers from depression and has migraines/headaches, back pain, coccyx pain, and left shoulder pain associated with the motorcycle accident. (Doc. 6 at 4-5 (citing doc. 5-10 at 105-09; r. 545-549).) She also has pain in her left knee. (Doc. 6 at 6 (citing doc. 5-13 at 44-45; r. 734-35).) Plaintiff's first argument is that the ALJ did not give proper weight to the opinion of one of her treating physicians, Dr. Hakim. 20 C.F.R. § 404.1527(c)(2) provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairments is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."

Here, however, the ALJ did not find Dr. Hakim's opinion so supported or consistent, and therefore decided not to give his opinion controlling weight.[4] (Doc. 5-3 at 37; r. 36.) The ALJ determined that reports from plaintiff's other treating and consulting physicians indicated that plaintiff's condition was more mild than she and Dr. Hakim considered it to be. The ALJ described in detail the medical source statement from Dr. Romeo's evaluation of plaintiff, which concluded that plaintiff "was able to sit, stand and walk for 8 hours each total in an 8-hour work day" and could perform a variety of motor skill-based activities. (Doc. 5-3 at 34; r. 33.) The ALJ also found Dr. Hakim's conclusion (that plaintiff's condition was moderately severe) inconsistent with his conclusion that she could "lift and/or carry 20 pounds occasionally; sit 3 hours, stand and walk (combined) 2 hours total, and that her prescribed medications would not create serious problems in most instances." (Doc. 5-3 at 37; r. 36.) Plaintiff's daily activities also undermined her assertion of the severity of her condition. (*Id.*) Perhaps the ALJ's biggest concern, however, was that Dr. Hakim's conclusions were "primarily based on [plaintiff's] less than fully credible, subjective

---

[4]The regulations provide that even when a treating physician's medical opinion is not entitled to controlling weight, it is still entitled to significant weight. *See* 20 C.F.R. 404.1527(c)(2)(i). However, the distinction becomes murky, since the more the ALJ finds that the opinion is inconsistent and unsupported (and thus not controlling), the less convincing the opinion will be to begin with. In cases where the medically acceptable clinical and laboratory diagnostic techniques yield little objective medical evidence of impairment, the weighing scheme tends to merge with the multi-factor inquiry evaluating pain.

10

assertions." (Doc. 5-3 at 37-38; r. 36-37.) This raises plaintiff's second argument, that the ALJ improperly discredited plaintiff's subjective testimony based on her daily activities. (Doc. 6 at 11.)

As symptoms, rather than "medically determinable physical or mental impairments," pain and fatigue are by definition "an individual's own description of his or her physical or mental impairment." SSR 96-7p. "[S]ymptoms, such as pain, are subjective and difficult to quantify . . . ." 20 C.F.R. § 416.929(c)(3). A doctor's note saying that a patient is experiencing pain does not transform that pain into a tumor or a virus. Pain doesn't show up in an x-ray or a blood sample—that is partly why the field of medicine reveres the relationship between a doctor and a patient. But that is also why the SSA issued SSR 96-7p. Contrary to plaintiff's argument, which apparently requires the ALJ to take "the doctor's own professional assessment" at face value, (doc. 6 at 10), the ALJ correctly relied on SSR 96-7p to evaluate the functional effect of plaintiff's pain.

SSR 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's

symptoms." The ALJ found that plaintiff "experiences underlying impairments capable of producing some pain and limitations . . . ." (Doc. 5-3 at 36; r. 35.)

The question remains: how much is "some?" If the ALJ finds that the claimant meets the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

Defining "objective medical evidence" is helpful because the evidence is powerful. This is the sort of evidence that can make a treating physician's opinion controlling. It can make a finding on credibility unnecessary. It is "obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." § 416.929(c)(2); 404.1529(c)(2). "Objective medical evidence" comes in two forms: medical signs and laboratory findings. 6 SOCIAL SECURITY LAW AND PRACTICE § 36.18. "Medical signs are anatomical, physiological, or psychological *abnormalities* which can be *observed apart* from symptoms." *Id*. (emphasis added). "Laboratory findings are anatomical, physiological, or psychological *phenomena*" which appear in things like "chemical tests" or "x-rays." *Id*.

The ALJ found that objective medical evidence did not substantiate plaintiff's "alleged inability to perform all substantial gainful activities" because of her pain. (Doc. 5-3 at 36-37; r. 35-36.) The ALJ relied in part on the lack of medical signs in Dr. Romeo's report. Dr. Romeo found that plaintiff's ranges of motion and gait were normal and that she had no deformities or abnormalities. (Doc. 5-3 at 33; r. 32.) The ALJ also found that the laboratory findings were negative: CT scans, electrodiagnostic imaging, MRI of the brain, neck, lumbar region, cervical spine, x-rays, and EMGs were all normal. (Doc. 5-3 at 37; r. 36.)

That leaves the plaintiff's proof of the functional effects of her pain dependent on "other evidence." This is the catchall provision under which the SSA will "take[] into account" almost any piece of evidence, but will not award any one piece controlling weight. The evidence comes from the claimant, his or her treating or nontreating sources, and other reports. 20 C.F.R. § 416.929(c)(3). But "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the individual's statements . . . ." SSR 96-7p. In assessing the credibility of the claimant's statements about her symptoms and their effects, the ALJ considers:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also* 20 C.F.R. 416.929(c)(3)(i)-(vii); 404.1529(c)(3)(i)-(vii).

Most of the ALJ's analysis focuses on the absence of objective medical evidence corroborating the alleged effects of plaintiff's pain. If that were all the ALJ relied upon, he would have run afoul of the SSA's regulations and policy interpretations discussed above, and probably Eleventh Circuit precedent as well. *See Moore v. Barnhart*, 405 F.3d 1208, 1211-1212 (11th Cir. 2005) (discussing but distinguishing an unpublished case in which the court reversed an ALJ decision for relying solely on a "lack of corroborative objective findings of impairment" when the plaintiff claimed her fibromyalgia debilitated her). However, the ALJ in this case also relied on "[a] medical source statement in July 2009 [that] was reflective of the ability to perform medium work activity," (doc. 5-3 at 33, 37; r. 32, 36), the improvement that she exhibited in coping with her depression on psychotropic medication, (doc. 5-3 at 38; r. 37), and her "self-reported activities of daily living," (doc. 5-3 at 37; r. 36). In *Moore*, the court recognized two points relevant to this case: "credibility determinations are the province of the ALJ," and "inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity" are proper bases for discrediting a claimant. *Moore*, 405 F.3d 1212. Here, the ALJ found that plaintiff's activities of "cooking, shopping, doing housework and laundry, reading, working on crossword

14

puzzles, watching television, taking care of her son, visiting with family, going to church, and driving," (doc. 5-3 at 37; r. 36 (citing doc. 5-7 at 17-21; r. 187-191 (Ex. "3E"))) (*see also* doc. 5-7 at 34-39; r. 204-209), undermined her "assertions of disabling pain and limitations." While that sentence glosses over the difficulty plaintiff sometimes has doing these activities, and certain activities are not inconsistent even with a bedridden person (watching television, reading, working on crossword puzzles), plaintiff's description of her daily activities is consistent with her sedentary RFC. The ALJ also cites "medical records," (doc. 5-3 at 37; r. 36 (citing doc. 5-9 at 83-87; r. 421-425 ("Ex. 10F"))), in which an examining physician "was concerned that patient's effort . . . was poor" and noted the inconsistency between plaintiff's poor performance in a hip flexion exam and plaintiff's ability "to walk down the hall with a very mildly abnormal gait," (doc. 5-9 at 87; r. 425). Therefore, the ALJ's conclusion that "plaintiff's allegations regarding her limitations were not totally credible" was based on substantial evidence. (Doc. 5-3 at 41; r. 40.)

Even though the ALJ found plaintiff's and Dr. Hakim's statements less than persuasive in evaluating the functional effects of plaintiff's pain, the ALJ did not, as plaintiff's brief puts it, "dismiss [the evidence] out of hand." (Doc. 6 at 10.) The chief report upon which the ALJ relied in forming his RFC was Dr. Romeo's, which would have called for an RFC that allowed for medium work. The ALJ's RFC allowed for plaintiff to do simple, sedentary work.

Plaintiff argues that the ALJ should have recontacted Dr. Hakim to more fully develop the record, (doc. 6 at 10), but because substantial evidence supports the ALJ's determination that plaintiff was not disabled, the ALJ did not err in failing to recontact Dr. Hakim. The following passage is instructive:

> First, the ALJ did not err by failing to recontact Dr. Abdulla for clarification of his report. As discussed above, substantial evidence supported the ALJ's determination that [plaintiff] was not disabled, and that decision was supported by other treating physicians . . . . [T]here was no need for additional information or clarification. In any event, [plaintiff] had the burden of producing evidence in support of his claim and was represented by counsel, who neither requested a clarification nor objected that the medical records were inadequate.

*Osborn v. Barnhart*, 194 F. App'x 654, 668-69 (11th Cir. 2006).

Based on the record as a whole, the court finds that the ALJ's determination that Ms. Edwards is capable of performing a limited range of sedentary work is supported by substantial evidence. Therefore, the decision of the ALJ, as adopted by the Commissioner, denying Ms. Edwards's claim for a period of disability and DIB is due to be affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 10th day of March, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE